UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYA KHANKIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JLR SAN JOSE, LLC, et al.,<br><br>    Defendants. | Case No. 3:23-cv-06145-JSC<br><br>**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 25, 31, 35, 38 |

Darya Khankin and Eliyahu Khankin sue JP Morgan Chase, Inc. ("Chase"), JLR San Jose, LLC ("JLR"), Jaguar Land Rover North America, LLC ("JLRNA"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and Trans Union, LLC ("Trans Union"), alleging Defendants engaged in false credit reporting surrounding their lease of a Land Rover. JLRNA, Equifax, Chase, and Trans Union have filed motions to dismiss. (Dkt. Nos. 25, 31, 35, 38.)[1] Having carefully considered the briefing, and with the benefit of oral argument on March 14, 2024, the Court GRANTS JLRNA's motion to dismiss, GRANTS Chase's motion to dismiss, and GRANTS Equifax's and Trans Union's motion to dismiss. Plaintiffs have not alleged sufficient facts to state their claims against these Defendants.

**COMPLAINT ALLEGATIONS**

Darya Khankin leased a 2020 Land Rover vehicle. (Dkt. No. 1 ¶ 4.) Eliyahu Khankin, Darya Khankin's spouse, co-signed the lease. (*Id.*) During the "two years and nine months" Plaintiffs leased the car, it was "out of service for an incredible 90+ days while allegedly being repaired." (*Id.*) Plaintiffs commenced a lawsuit under the applicable warranty law, the Beverly-

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   Song Warranty Act, in state court.  (*Id.* ¶ 20.)

2       While that lawsuit was pending, in May of 2023, Plaintiffs turned in the vehicle to JLR San Jose.  (*Id.*)  "[T]he bank and car dealer, as well as its national organization, colluded in some as-yet unknown fashion to violate Plaintiffs' rights."  (Dkt. No. 1 ¶ 17.)  The dealership "declined to process the vehicle return."  (*Id.* ¶ 2.)  "As a result, the bank reported Plaintiffs delinquent on their lease even though Plaintiffs had lawfully elected to rescind their lease and turn in the vehicle."  (*Id.*)

    Plaintiff then paid off the remainder of the lease "so as to avoid further negative credit reporting."  (*Id.*)  However, "even *after* the payoff of the lease in full, **Defendants continued and still continue to falsely report a significant past due balance from Plaintiffs**."  (*Id.*)  On October 4, 2023, Plaintiffs attempted to "correct the false reporting . . . by providing a verified, lengthy explanation (and a copy of their state lawsuit) to the bureaus."  (Dkt. No. 1 ¶ 21.)  Despite these efforts, "Plaintiffs *still* suffer from this negative reporting because the bureaus have each *refused to correct the information*, even when presented with clear evidence."  (*Id.*)

    Plaintiffs' credit scores have "dropped by 120-150 points each, preventing them from getting credit on reasonable terms."  (*Id.*)

    Plaintiffs bring four causes of action against all Defendants: (1) violations of fair credit reporting act; (2) defamation; (3) unfair competition under California Civil Code § 2987(g); and (4) declaratory relief.

**DISCUSSION**

    A complaint should be dismissed under Rule 12(b)(6) if it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## I.  CHASE'S MOTION TO DISMISS

Chase moves to dismiss all four causes of action Plaintiffs allege against Chase.  (Dkt. No. 35.)

### A. Violations of Fair Credit Reporting Act

Plaintiffs' first cause of action alleges Defendants "willfully and/or negligently violated the Fair Credit Reporting Act, which requires them to correct the false credit reporting and not continue to report the false information." (Dkt. No. 1 ¶ 24.)  "Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x . . . to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (cleaned up).  "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Id.*  "The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements." *Id.* (citing 15 U.S.C. §§ 1681n & o); *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002) (holding consumers have a private right of action against furnishers for violations of § 1681s–2(b)).

In their complaint, Plaintiffs do not cite which provision of the Fair Credit Reporting Act they allege Chase violated.  Plaintiffs' opposition asserts Chase violated 15 U.S.C. § 1681s-2(b), which provides furnishers have a duty to "conduct an investigation" after receiving "notice . . . of a dispute with regard to the completeness or accuracy of any information provided . . . to a consumer reporting agency."  15 U.S.C.A. § 1681s-2(b).  But Plaintiffs have not alleged any facts indicating they provided notice to Chase about the dispute or about Chase's investigation or lack-thereof.  Nor have Plaintiffs made any specific allegations as to *Chase*—instead, Plaintiffs merely allege "Defendants," as a whole, violated the Fair Credit Reporting Act, (Dkt. No. 1 ¶ 24.)  *See In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) ("Plaintiffs' failure to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.  In any amended complaint, Plaintiffs must identify what action each Defendant took

3

1   that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a
2   whole."). So, the Court GRANTS Chase's motion to dismiss Plaintiffs' first cause of action.
3         Chase argues granting Plaintiffs leave to amend would be "futile" and "unnecessarily
4   prolong this case." (Dkt. No. 48 at 4.)   Generally, the Ninth Circuit has a liberal policy favoring
5   amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow*
6   *Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). "Dismissal without leave to amend is
7   improper unless it is clear . . . the complaint could not be saved by any amendment." *B&G Foods*
8   *N. Am., Inc. v. Embry*, 29 F.4th 527, 541 (9th Cir.), *cert. denied,* 143 S. Ct. 212 (2022) (quoting
9   *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).
10        The Court GRANTS Chase's motion to dismiss WITH LEAVE TO AMEND. Chase has
11  not provided any reason why Plaintiffs' complaint under the Fair Credit Reporting Act is
12  unavailable as a matter of law or otherwise explained why Plaintiffs would be unable to save their
13  claim by amendment.

### B. Defamation

15  Plaintiffs' second cause of action alleges "Defendants willfully defamed Plaintiffs by way
16  of false credit reporting," and cites to attached "copies of the negative credit reporting showing the
17  defamatory matter." (Dkt. No. 1 ¶ 26.) Chase moves to dismiss this cause of action, asserting the
18  Fair Credit Reporting Act "expressly preempts state laws which seek to impose requirements
19  relating to the furnishers of information," including this defamation claim. (Dkt. No. 35 at 9.)
20        The Fair Credit Reporting Act provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under – . . .
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—
>     (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>     (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

27  15 U.S.C.A. § 1681t(b).
28        Plaintiffs do not address 15 U.S.C.A. § 1681t(b). Instead, Plaintiffs argue "[d]efamation

4

1   claims may be asserted against a data furnisher (*e.g.*, Chase) to the extent the conduct is alleged to

2   have been done with malice or willful intent to injure the plaintiff," citing 15 U.S.C. § 1681h(e).

3   (Dkt. No. 43 at 9.)  Section 15 U.S.C. § 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e). So, "§ 1681t(b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s–2," but "§ 1681h(e) suggests that defamation claims can proceed against creditors as long as the plaintiff alleges falsity and malice." *Gorman*, 584 F.3d at 1166-67.

The Ninth Circuit has not resolved how to interpret the interaction of these two preemption provisions of the Fair Credit Reporting Act.  In *Gorman*, the Ninth Circuit discussed the legislative history of the two sections, explaining 15 U.S.C.A. § 1681t(b), the preemption provision Chase cites, was added in a 1996 amendment to the Fair Credit Reporting Act.  584 F.3d at 1166.  But when 15 U.S.C.A. § 1681t(b) was added, "[n]o changes were made to § 1681h(e)." *Id.*  The Ninth Circuit explained "[a]ttempting to reconcile the two" preemption sections of the Federal Credit Reporting Act "has left district courts in disarray."  *Id.*  Some courts employ the "total preemption approach," concluding "the later-enacted § 1681t(b)(1)(F) effectively repeals the earlier preemption provision, § 1681h(e)." *Id.* at 1167 (citing *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F. Supp. 2d 356, 361 (E.D. Pa. 2001)); *see also Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011) ("[T]he operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption."); *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011) ("Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication.  It is that the statutes are compatible: the first-

5

enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more.").

Other courts employ the "temporal approach." "Under the temporal approach, state law claims based on actions of a furnisher of information after the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F), while actions taken before notice has been received may not be preempted." *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *8 (E.D.N.Y. May 16, 2005). Since § 1681t(b)(1)(F) provides no state law claims may be asserted "with respect to any subject matter regulated under – . . . section 1681s-2 of this title," courts limit the preemptive effect of § 1681t(b)(1)(F) to causes of action that could be regulated under § 1681s-2: § 1681s-2(a)(1)(B) regulates furnishers who provide inaccurate information after receiving notice from the consumer that the information is inaccurate; § 1681s-2(b) regulates furnishers who provide inaccurate information after receiving notice of inaccuracy from a credit reporting agency. "Either way, once a furnisher of information has notice *from any source* and provides inaccurate information, the conduct is 'subject matter regulated under ... section 1681s-2,'" and "any state law claim predicated on a furnisher providing inaccurate information after receiving notice of a dispute is completely preempted by § 1681t(b)(1)(F)." *Kane*, 2005 WL 1153623, at *8 (cleaned up).

Finally, some courts have taken a "statutory preemption" approach and have concluded § 1681t(b)(1)(F) only preempts claims based on state statutes, while § 1681h(e) applies to state common law torts. *See, e.g.*, *Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 429 (E.D. Pa. 2006) ("When one examines t(b)(1)(F) in the context of 1681t and the [Fair Credit Reporting Act] as a whole, one can discern a congressional intent to limit the preemptive effect of t(b)(1)(F) to state statutory causes of action.").

"The majority of district courts in the Ninth Circuit favor the total preemption approach." *Farrell v. Portfolio Recovery Assocs.*, No. CV 14-03941 RGK, 2014 WL 7745881, at *4 (C.D. Cal. Sept. 19, 2014) (collecting cases); *see also Dorian v. Cmty. Loan Servicing, LLC,* No. 22-CV-04372-DMR, 2023 WL 395790, at *9 (N.D. Cal. Jan. 25, 2023) (same). The Court finds the total preemption approach persuasive and applies it here.

6

1    The temporal approach exposes furnishers to more liability before they are on notice of a
2 dispute and immunizes them from some claims after they are on notice—a result that is
3 contradictory and seems at odds with Congressional intent.  *See Johnson v. Citimortgage, Inc.*,
4 351 F. Supp. 2d 1368, 1375 (N.D. Ga. 2004) (explaining the temporal approach has "the effect of
5 giving a furnisher of information more protection from exposure to liability for acts committed
6 *after* receiving notice of dispute than for acts committed *before* such notice.  It seems odd to this
7 Court that Congress intended to protect furnishers of information more once they have knowledge
8 that a consumer is disputing an item on his credit report; one would, logically, expect the opposite
9 policy") (quoting *Neal v. Equifax Credit Info. Servs., Inc.*, No. CIV A 103-CV-0761-JE, 2004 WL
10 5238126, at *6 (N.D. Ga. Mar. 11, 2004)).

11   The statutory preemption approach is contrary to the plain text of the statute, as the
12 approach reads "laws" in 15 U.S.C.A. § 1681t(b) to mean only state statutes and not state common
13 law though nothing in the text indicates "laws" was meant to exclude common law.  *See Purcell v.*
14 *Bank of Am.*, 659 F.3d 622, 623–24 (7th Cir. 2011) ("What reason could Congress have had for
15 distinguishing between statutory and common law in such an obscure way? For that matter, what
16 reason would the legislature have had for preempting state statutes regulating information sent to
17 credit bureaus, while not preempting state common law regulating the same subject?").

18   The total preemption approach best aligns with the statutory text and congressional intent.
19 *See Davis v. Maryland Bank*, No. 00-04191, 2002 WL 32713429, at *13 (N.D. Cal. June 19, 2002)
20 ("[T]he legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to
21 create a uniform scheme governing the disclosure of credit information. . . Allowing common law
22 tort claims which implicate the same subject matter as section 1681s–2(1) would undermine
23 Congress' intention to create a uniform system of protection for consumers.").  Indeed, the fact 15
24 U.S.C.A. § 1681t(b) specifically exempts two state statutes— section 54A(a) of chapter 93 of the
25 Massachusetts Annotated Laws and section 1785.25(a) of the California Civil Code—indicates
26 Congress thought through section 1681t(b)'s preemptive effect on other laws, and desired only the
27 two enumerated laws to be exempted from its preemptive effect.

28   Plaintiffs' defamation claim against Chase is therefore preempted by 15 U.S.C. § 1681t(b)

United States District Court
Northern District of California

7

1   because the claim is "with respect to . . . subject matter regulated under – . . . section 1681s-2." 15
2   U.S.C.A. § 1681t(b).  Section "1681s-2 imposes specific duties and responsibility on 'furnishers.'"
3   *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1235 (9th Cir. 2023).  As Plaintiffs
4   acknowledge, Chase is a "furnisher" of information to credit reporting agencies.  (Dkt. No. 43 at 4,
5   9.)  The Ninth Circuit has recently cautioned "§ 1681t(b)(1)(F) does not preempt state law claims
6   against a defendant who happens to be a furnisher of information to a consumer reporting agency
7   within the meaning of the [Federal Credit Reporting Act] if the claims against the defendant do
8   not also concern that defendant's legal responsibilities as a furnisher of information under the
9   FCRA."  *Aargon Agency, Inc.*, 70 F.4th at 1235 (quoting *Galper v. JP Morgan Chase Bank, N.A.*,
10  802 F.3d 437, 446 (2d Cir. 2015)).  However, Plaintiffs' defamation claim against Chase is based
11  on allegedly false information Chase supplied to credit reporting agencies, so it fits squarely
12  within the activities regulated by § 1681s-2.  (*See* Dkt. No. 1 ¶¶ 1-3.)  Plaintiffs' cited case, *Meza*
13  *v. Experian Info. Sols., Inc.*, 2019 WL 6840390 at *9 (E.D. Cal. Dec. 16, 2019), is not to the
14  contrary, as the defendant there was a consumer reporting agency, not a furnisher.
15  So, Plaintiffs' defamation claim against Chase is DISMISSED WITHOUT LEAVE TO
16  AMEND.

### C. Unfair Competition under California Civil Code § 2987(g)

18  Plaintiffs' third cause of action brings an "Unfair Competition" claim against all
19  Defendants.  California's Unfair Competition Law, California Business & Professions Code §
20  17200, prohibits "unfair competition," which it defines as "unlawful, unfair or fraudulent business
21  act or practice and unfair, deceptive, untrue or misleading advertising," along with other
22  prohibited act.  Cal. Bus. & Prof. Code § 17200.  Because it is "written in the disjunctive, it
23  establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair,
24  or fraudulent." *Cal-Tech Comms. Inc., v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163,
25  180 (1999).  Plaintiffs bring the claim under the "unlawful" prong of the statute.  (Dkt. No. 1 ¶
26  28.)  "With respect to the unlawful prong, virtually any state, federal or local law can serve as the
27  predicate for an action."  *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th
28  508, 515 (2002) (cleaned up).

Plaintiffs allege Defendants violated "Cal. Civil Code sec. 2987(g)" which "makes it unlawful to report to credit bureaus when a consumer rescinds a lease according to law." (Dkt. No. 1 ¶¶ 28-29). California Civil Code § 2987(g), provides:

> If the lessee terminates a lease contract, voluntarily returns possession of the vehicle to the lessor, and timely pays all sums required under the lease contract as limited by this section, the lessor or holder shall not provide any adverse information concerning the early termination to any consumer credit reporting agency.

Cal. Civ. Code § 2987(g). Chase moves to dismiss this cause of action, asserting the Fair Credit Reporting Act also preempts this claim.

As discussed above, § 1681t(b) of the Fair Credit Reporting Act "expressly saves" California Civil Code § 1785.25(a) "from preemption." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) (citing 15 U.S.C.A. § 1681t (b)(1)(F)(ii)). "Because section 1785.25(a) is the only substantive [California Consumer Credit Reporting Agencies' Act] furnisher provision specifically saved by the [Fair Credit reporting Act]," Plaintiffs' UCL unlawful prong claim premised on a violation of section 2987(g) claim is preempted. *Carvalho*, 629 F.3d at 889 (holding only section 1785.25(a) is saved by the Fair Credit Reporting Act and therefore section 1785.25(f) is preempted). So, Plaintiffs' unlawful prong UCL claim must be dismissed.

In their opposition, Plaintiffs contend Chase also violated California Civil Code § 1785.25(a), and therefore an Unfair Competition Law claim can be based on that violation. Section 1785.25(a) provides "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." But the complaint does not allege a violation of that statute.

Moreover, premising the Unfair Competition Law claim on a violation of California Civil Code § 1785.25(a) would not save Plaintiffs' claim. In *Gorman*, the Ninth Circuit discussed whether the preemption provision of the Fair Credit Reporting Act, § 1681t(b), preempts California Civil Code §§ 1785.25(g) and 1785.31, the sections which authorize a private right of

9

action to enforce California Civil Code § 1785.25(a). 584 F.3d at 1170. The court explained the preemption statute provides: "No requirement or prohibition may be imposed" with respect to subjects regulated under § 1681s-2. 15 U.S.C.A. § 1681t(b). Because California Civil Code §§ 1785.25(g) and 1785.31 do not impose a 'requirement or prohibition,' as instead "these sections merely provide a vehicle for private parties to enforce other sections, which do impose requirements and prohibitions," the two sections are not preempted by the preemption provision. *Gorman*, 584 F.3d at 1171*; see also Carvalho*, 629 F.3d at 888 ("The provisions creating a private right of action do not constitute a 'requirement or prohibition' within the meaning of 15 U.S.C. § 1681t(b)(1)(F) because they merely provide a vehicle for enforcing actual requirements or prohibitions.").

However, the Unfair Competition Law *does* impose an independent requirement or prohibition; namely, it prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, (1999) ("The statutory language referring to "any unlawful, unfair *or* fraudulent" practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.") So, because the Unfair Competition Law "would impose an independent requirement or prohibition on furnishers of information to [Credit Reporting Agencies], it is preempted by the [Fair Credit Reporting Act]." *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1150 (N.D. Cal. 2010); *see also Miller v. Bank of Am., Nat. Ass'n*, 858 F. Supp. 2d 1118, 1124 (S.D. Cal. 2012) ("[T]he [Fair Credit Reporting Act] preempts claims brought under California's [Unfair Competition Law] insofar as they relate to the responsibilities of furnishers of credit information governed by section 1681s–2."); *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1144 (N.D. Cal. 2005) (holding the Fair Credit Reporting Act preempts a similar claim under the Unfair Competition Law).

Because Plaintiffs cannot save their claim through amendment, the Court DISMISSES Plaintiffs' Unfair Competition Law claim WITHOUT LEAVE TO AMEND.[2]

---

[2] However, this order does not prevent Plaintiffs from directly bringing a California Civil Code § 1785.25(a) claim in any amended complaint, if Plaintiffs can do so consistent with Federal Rules

10

### D. Declaratory Relief

Plaintiffs' fourth cause so action "seek[s] a judicial decree stating that the lease contract is rescinded and Plaintiffs have no obligations to Defendants." (Dkt. No. 1 ¶ 31.)

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted. Additionally, a claim for declaratory relief is duplicative and unnecessary when it is commensurate with the relief sought through other causes of action." *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 964 (N.D. Cal. 2012) (cleaned up).

Accordingly, Plaintiffs' independent claim for declaratory relief is DISMISSED. Because any attempts to amend would be futile, the claim is dismissed without leave to amend. *Rutman Wine Co.*, 829 F.2d at 738.

## II.  JLRNA'S MOTION TO DISMISS

JLRNA moves to dismiss Plaintiffs' claims against it because Plaintiffs' complaint "makes no specific allegations against" JLRNA.[3] (Dkt. No. 25 at 3.) JLRNA admits it is the "manufacturer of the Vehicle" (*id.* at 3), but asserts because it "did not lease the Vehicle to Plaintiffs, did not finance Plaintiffs' lease and was not involved with any credit reporting regarding Plaintiffs," Plaintiffs have not alleged any plausible claims against JLRNA.

Plaintiffs only reference JLRNA in their complaint once: asserting JLRNA "is a Delaware Limited Liability Company that is registered to do business in this state." (Dkt. No. 1 ¶ 8.) Plaintiffs later seem to refer to JLRNA, alleging "the bank and the car dealer, as well as its national organization, colluded in some as-yet unknown fashion to violate Plaintiffs' rights." (*Id.* ¶ 17.) Plaintiffs make no specific allegations about JLRNA's conduct. So, Plaintiffs have not plausibly alleged factual content that allows the court to draw a reasonable inference JLRNA is liable for any alleged misconduct. *Iqbal*, 556 U.S. at 678. Accordingly, JLRNA's motion to dismiss is GRANTED as to all claims.

---

of Civil Procedure 11.

[3] In their opposition, Plaintiffs assert "[i]n the event JLR San Jose does intend to appear, Plaintiffs may be willing to dismiss Defendant voluntarily in an effort to conserve judicial resources and resolve the matter." (Dkt. No. 39 at 2.) JLR San Jose LLC, dba Jaguar Land Rover San Jose, has since answered the complaint. (Dkt. No. 40.)

11

In their response, Plaintiffs assert "Defendants, in concert with the other named defendants, worked together to cause Plaintiffs . . . harm." (Dkt. No. 39 at 1-2.) Plaintiff argues because it is "an open question as to who made statement and when they were made," Plaintiffs should be able to do discovery to determine whether JLRNA is responsible for any misconduct. (*Id.* at 2.) But the standard for a 12(b)(6) motion is not whether it is an "open question" whether Defendants are liable; instead, Plaintiffs must plausibly plead factual allegations that allows the court to reasonably infer Plaintiffs' entitlement to relief. *Iqbal*, 556 U.S. at 677-78 (citing Federal Rules of Civil Procedure 8(a)(2)). Plaintiffs have failed to plead any such facts about JLRNA.

Plaintiffs further assert the local dealership, JLR San Jose, and JLRNA have an "indemnity and/or warranty agreement arising out of the related State case," and "thus are proper defendants here." (*Id.* at 2.) However, Plaintiffs' complaints contain no such allegations about any such agreement, nor explained why such an agreement would make JLRNA a proper defendant to this case.

So, JLRNA's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to all claims, except for the independent claim for declaratory relief, which is DISMISSED WITHOUT LEAVE TO AMEND because declaratory relief is not an independent claim as a matter of law.

### III. EQUIFAX'S MOTION TO DISMISS AND TRANS UNION'S MOTION TO DISMISS

Equifax moves to dismiss Plaintiff's complaint. (Dkt. No. 31.) Trans Union joins Equifax's motion to dismiss.[4] (Dkt. No. 38.)

#### A. Violations of Fair Credit Reporting Act

Plaintiffs' first cause of action alleges Defendants "willfully and/or negligently violated the Fair Credit Reporting Act, which requires them to correct the false credit reporting and not continuing to report the false information." (Dkt. No. 1 ¶ 24.) While Plaintiffs do not cite any particular provision of the Fair Credit Reporting Act in their complaint, both sides agree Plaintiffs

---

[4] Trans Union filed a Notice of Plaintiffs' non-opposition to its motion to dismiss. (Dkt. No. 51.) However, because Trans Union joined Equifax's motion to dismiss in its entirety, (Dkt. No. 38), the Court treats Plaintiffs' opposition to Equifax's motion to dismiss (Dkt. No. 41), as opposing both Equifax and Trans Union's motions. The Court grants Trans Union's request to join in Equifax's reply in support of its motion to dismiss. (Dkt. No. 51.)

are asserting a claim under the Fair Credit Reporting Act's reinvestigation provision, 15 U.S.C. § 1681i.  (Dkt. Nos. 31 at 6; 41 at 3.)

To state a claim under the Fair Credit Reporting Act's reinvestigation provision, the Ninth Circuit requires "an actual inaccuracy exist." *Carvalho*, 629 F.3d at 890.  Plaintiffs allege two such inaccuracies: (1) the local dealership declined to process the vehicle return and refused to correct the record with the bank, so the bank reported  Plaintiffs delinquent on their lease even though Plaintiffs had lawfully elected to rescind their lease and return the vehicle; (2) even after Plaintiffs paid off their lease in full in an attempt to remedy their credit score, Defendants continued to falsely report a significant past due balance from Plaintiffs.  (Dkt. No. 1 ¶ 2.)

The first claimed inaccuracy—the credit reporting agencies reported Plaintiffs as delinquent even after they returned the vehicle—cannot form the basis of Plaintiffs' § 1681i claim.  In *Carvalho*, the Ninth Circuit considered a claim that a credit reporting agency violated the California Consumer Credit Reporting Agencies Act, which is "is substantially based on the Federal Fair Credit Reporting Act." *Carvalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003)).  In considering whether *Carvalho* had raised a genuine dispute as to whether her credit report was factually accurate to preclude summary judgment, the court assumed the Fair Credit Reporting Act and the California Consumer Credit Reporting Agencies Act are interpreted "consistently." *Id.* at 890.  The court then found there was no genuine dispute because the plaintiff's "claimed inaccuracy" was "*latent*" as she agreed the report was "technically accurate," and only argued "not legally obligated to pay" a bill that was appearing as delinquent on her report.  *Id.*  The court explained:

> Carvalho contends that credit reporting agencies unfairly malign the creditworthiness of innocent consumers by reporting disputed debts without undertaking a searching inquiry into the consumer's legal defenses to payment. In other words, she believes consumers should be deemed innocent until proven guilty by a proper reinvestigation under the [Fair Credit Reporting Act] and [California Consumer Credit Reporting Agencies Act]. The fundamental flaw in Carvalho's conception of the reinvestigation duty is that credit reporting agencies are not tribunals. They simply collect and report information furnished by others. Because [credit reporting agencies] are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims.

13

*Id.* at 891. So, the court explained, "a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher," as a credit reporting agency "is not required as part of its reinvestigation duties to provide a legal opinion on the merits." *Id.* at 892. Whether Plaintiffs validly rescinded their lease agreement under California's "Lemon Law" is a legal determination that remains pending in state court. Therefore, this alleged inaccuracy cannot form the basis of Plaintiffs' reinvestigation claim against Equifax and Trans Union.

Plaintiffs respond it would be improper to dismiss this claim at this "early state in the case," as doing so would prevent Plaintiffs from conducting discovery. (Dkt. No. 41 at 5.) They argue that most of Equifax's cited cases were at the summary judgment stage, rather than at the motion to dismiss stage. Plaintiffs cite *Hurst v. Equifax Info. Servs., LLC*, No. SA-20-CV-1366-JKP-ESC, 2021 U.S. Dist. LEXIS 239227, at *19 (W.D. Tex. Dec. 15, 2021), arguing "[t]he procedural context can make a significant difference in the outcome of a dispositive motion." In *Hurst*, the Court denied a defendant's motion to dismiss because the plaintiff had pled "the Landlord terminated the lease before it began, thus making her not responsible for the lease balance." *Id.* at *18. Therefore, "credit reporting agencies" were not required "to engage in any determination as to whether Plaintiff is legally responsible for the debt" since "Plaintiff never incurred the debt." *Id.* at *18-19. Accordingly, the *Hurst* plaintiff had notified the credit reporting agencies of a factual, rather than legal, dispute. Moreover, Plaintiffs also acknowledge cases dismissing complaints at the pleading stage because the plaintiffs alleged only legal inaccuracies in credit reports. *See, e.g.*, *Denan v. Trans Union LLC*, 959 F.3d 290, 295-96 (7th Cir. 2020) (explaining "a consumer's defense to a debt is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the [Fair Credit Reporting Act]" and affirming a district court's judgment on the pleadings because plaintiffs were only contesting the legal accuracy of their debt and credit reporting agencies do not have "a duty to determine the legality of a disputed debt"); *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 565 (7th Cir. 2021) (dismissing the plaintiffs' complaint because the "plaintiffs' allegations that the creditors did not own their debts are not factual inaccuracies that the consumer reporting

14

agencies are statutorily required to guard against and reinvestigate, but primarily legal issues outside their competency").

Plaintiffs further assert the issue "is purely factual" and not a legal issue. (Dkt. No. 41 at 5.) However, the question of whether Plaintiffs' return of their car properly rescinded their lease is a legal issue—a legal issue that remains pending in California court. Under California's Song-Beverly Act, only when "the manufacturer . . . is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts," is the buyer (or in this case, lessee) entitled to "restitution." *Ramos v. Mercedes-Benz USA, LLC*, 55 Cal. App. 5th 220, 225 (2020), *as modified* (Oct. 1, 2020) (citing Cal. Civ. Code § 1793.2(d)(2)). So, determining whether Plaintiffs were required to pay the remainder of their lease involves a legal determination as to whether the manufacturer made a reasonable number of attempts at fixing the car. Equifax and Trans Union are not required to make such legal determinations.

Finally, Plaintiffs assert if the Court requires Plaintiffs to wait until the conclusion of their "Lemon Law" state court case before suing Equifax and Trans Union, then Plaintiffs "could effectively be left without a remedy at law here" because of the Fair Credit Reporting Act's two-year statute of limitations. (Dkt. No. 41 at 6.) Not so—Plaintiffs can (and did) bring their complaint against the relevant furnishers of the allegedly inaccurate information. Indeed, this is the exact result the Ninth Circuit contemplated in *Carvalho*. 629 F.3d at 892 ("[A] consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher," as a credit reporting agency "is not required as part of its reinvestigation duties to provide a legal opinion on the merits"). Further, Plaintiffs have not yet pled a violation of the Fair Credit Reporting Act's reinvestigation provision as it relates to their Lemon Law lawsuit because the agencies have no duty to make legal conclusions, so any statute of limitations related to such a claim has not yet begun to run. If Plaintiffs are successful in their Lemon Law lawsuit and, even after that success, credit reporting agencies report Plaintiffs as delinquent on their lease, Plaintiffs can request the agencies investigate the discrepancy, and if the agencies fail to do so, the agencies will have violated the Fair Credit Reporting Act. At that time, the statute of limitations will begin to run, and Plaintiffs

15

1  would be able to bring a reinvestigation suit because of that violation.

2       Equifax and Trans Union assert the second claimed inaccuracy—the credit reporting
3  agencies continued to report Plaintiffs as delinquent even after Plaintiffs fully paid off their lease
4  amount—cannot be the basis of a reinvestigation claim because Plaintiffs did not include this
5  information in their dispute letters with either Equifax or Trans Union.  Under § 1681i, a credit
6  reporting agency's duty to investigate is triggered "if the completeness or accuracy of any item of
7  information contained in a consumer's file at a consumer reporting agency is disputed by the
8  consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such
9  dispute."  15 U.S.C.A. § 1681i(a)(1)(A).

10      While the complaint alleges "Plaintiffs reasonably attempt[ed] to correct the false reporting
11 . . . by providing a verified, lengthy explanation (and a copy of their state lawsuit) to the bureaus
12 on October 4, 2023" (Dkt. No. 1 ¶ 21), Equifax and Trans Union insist relevant information was
13 omitted from the letter.  As support, Equifax attaches a copy of a letter it asserts is "the dispute
14 letter referenced by Plaintiffs' Complaint."  (Dkt. No. 31 at 4.)  Trans Union asserts this letter "is
15 identical to the dispute letter Plaintiffs' counsel sent to Trans Union."  (Dkt. No. 38 at 2.)  Equifax
16 argues the Court can consider this letter because the content of the letter is referenced in the
17 Complaint, so it is incorporated by reference.  While "[g]enerally, district courts may not consider
18 material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)
19 of the Federal Rules of Civil Procedure . . . the incorporation-by-reference doctrine" allows
20 "district courts to consider materials outside a complaint."  *Khoja v. Orexigen Therapeutics, Inc.*,
21 899 F.3d 988, 998 (9th Cir. 2018).  "[A] defendant may seek to incorporate a document into the
22 complaint 'if the plaintiff refers extensively to the document or the document forms the basis of
23 the plaintiff's claim.'"  *Id.* at 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.
24 2003)).  Equifax's attached letter is dated September 30, 2023—not October 4—the date Plaintiffs
25 allege they provided the explanation.  (Dkt. No. 31-2 at 1.)  However, Plaintiffs refer to the letter
26 in their opposition, (Dkt. No. 41 at 7-8 ("Here, as seen from Exhibit A attached to [Equifax's]
27 motion . . .)), and do not dispute its authenticity or contents.  So, the Court will consider the
28 contents of the letter.

16

The letter, sent by Plaintiffs' attorney, provides:

> In summary, my clients leased a 2020 Range Rover from a regional auto dealer, JLR Stevens Creek San Jose, through Chase Financial. The vehicle was out of service for repairs for approximately 97 days (more than three months) out of the 30 months that they leased the vehicle. Finally, they turned in the vehicle on May 1, 2023 rather than continue to suffer the burden of a seriously defective vehicle, which by the way injured Dr. Khankin on at least two occasions. **On my advice, they stopped paying the lease payments in June 2023 because they no longer had the vehicle in their possession and had given notice of recission in the lawsuit.**
>
> The account with Chase was reported as delinquent in June 2023 even though (1) the subject vehicle was returned under the applicable "Lemon Law" in California, (2) the issue is the subject of active litigation in the lemon law case, and (3) the lawsuit is substantially certain to result in a win for my clients under the applicable state law warranty act, which will grant them rescission of the auto lease. **The simple fact is, they stopped making payments after they turned in the car and had no further benefit from the car.**
>
> In other words, Chase reporting the auto lease account as delinquent is defamatory and violates the Fair Credit Reporting Act and the Fair Debt Collection Practices Act. Among other reasons, the tradeline is untrue and omits material facts.

(Dkt. No. 31-2 at 1-2 (emphasis added).)

No where in Plaintiffs' letter to the credit reporting agencies do Plaintiffs inform the agencies they paid off their lease in full. Indeed, Plaintiffs assert the exact opposite, explaining they "stopped making payments after they turned in the car." So, the credit reporting agencies were not put on notice to investigate Plaintiffs' assertion Plaintiffs had already paid the remaining lease amount.

Plaintiffs assert the letter put Equifax and Trans Union on notice of a "dispute involv[ing[ the existence of and amount due under Plaintiffs' auto lease," which is sufficient notice to trigger the agencies' investigation duties. (Dkt. No. 41 at 8.) However, Plaintiffs' letter, which asserted Plaintiffs returned the car and stopped paying the lease on the car on their attorney's advice, "did not put" the credit reporting agencies "on notice that Plaintiff[s] w[ere] claiming a different purported inaccuracy." *Herisko v. Bank of Am.*, 367 F. App'x 793, 794 (9th Cir. 2010). While Plaintiffs' letter to the agencies put the agencies on notice of their *legal* dispute with the credit report (e.g., Plaintiffs' assertion they properly rescinded their lease and therefore were not legally

17

obligated to pay the remainder), it did not put the agencies on notice of their *factual* dispute with the credit report (e.g., Plaintiffs' assertion they paid the remaining lease amount and therefore any indication they owed money under the lease was inaccurate). "Plaintiff[s'] dispute letter was therefore insufficient to trigger" the credit reporting agencies' duties "under § 1681i" because it only put the agencies on notice of a legal, not factual, dispute. *Id.*

So, the Court GRANTS Equifax's and Trans Union's motion to dismiss Plaintiffs' Fair Credit Reporting Act claim against those two entities WITH LEAVE TO AMEND. Plaintiffs may be able to plead a plausible violation of 15 U.S.C.A. § 1681i(a)(1)(A) against both Equifax and Trans Union if they can allege they notified Equifax and Trans Union they paid off their lease in full, and even after that notification, the credit reporting agencies failed to reasonably investigate their claim.

### B. Defamation

Plaintiffs' second cause of action alleges "Defendants willfully defamed Plaintiffs by way of false credit reporting." (Dkt. No. 1 ¶ 26.) Equifax and Trans Union assert Plaintiffs have failed to plead "malice or willful intent to injure," so Plaintiffs' claims are preempted by the Fair Credit Reporting Act.

As discussed above, one of the preemption provisions of the Fair Credit Reporting Act provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e). So, Plaintiffs are required to plead sufficient facts to make a plausible claim Equifax and Trans Union acted willfully or with malice.

Plaintiffs allege they continue to suffer from negative reporting because Equifax and Trans Union "have each *refused to correct the information*, even when presented with clear evidence."

18

(Dkt. No. 1 ¶ 7.)  Plaintiffs may be able to plead malice or willfulness by pleading facts indicating the agencies *knew* the information they reported was false.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  However, as discussed above, Plaintiffs have failed to allege they provided the requisite notice to the agencies, so they have not alleged sufficient facts to demonstrate the agencies had "clear evidence" of the inaccuracies in Plaintiffs' credit reports, and despite that evidence, continued to publish false information about Plaintiffs.  So, Plaintiffs have not yet sufficiently pleaded willfulness.

So, Equifax's and Trans Union's motion to dismiss Plaintiffs' defamation claim is GRANTED WITH LEAVE TO AMEND.

### C. Unfair Competition under California Civil Code § 2987(g)

Plaintiffs' third cause of action brings an "Unfair Competition" claim against all Defendants.  Plaintiffs allege Defendants violated California Civil Code § 2987. (Dkt. No. 1 ¶¶ 28-29).  California Civil Code § 2987(g) provides requirements for lessors, stating they "shall not provide any adverse information concerning the early termination to any consumer credit reporting agency."  In their complaint, Plaintiffs do not allege either Equifax or Trans Union were lessors.  In their response, Plaintiffs acknowledge they are both consumer reporting agencies.  (Dkt. No. 41 at 2.)  Therefore, California Civil Code § 2987(g) does not impose any requirements on Equifax or Trans Union, and their motion to dismiss Plaintiffs' Unfair Competition law claim is GRANTED.

In their opposition, Plaintiffs argue they need "discovery to determine the specific actions taken by Defendant[s] with regard to Plaintiffs and their credit reports."  (Dkt. No. 41 at 9.)  However, Plaintiffs are not entitled to such discovery unless they can plausibly state a claim on which relief can be granted, which they have not yet done.

Because Plaintiffs may be able to save their complaint through amendment, the Court DISMISSES Plaintiffs' unfair competition law claim WITH LEAVE TO AMEND.

### D. Declaratory Relief

As discussed above, declaratory relief is not an independent cause of action.  So, Plaintiffs' independent claim for declaratory relief is DISMISSED as to both Equifax and Trans Union.  Because any attempts to amend would be futile, the claim is dismissed WITHOUT LEAVE TO

19

1  AMEND. *Rutman Wine Co.*, 829 F.2d at 738.

## CONCLUSION

For the reasons stated above, Chase's motion to dismiss is GRANTED in its entirety. Plaintiffs' causes of action for defamation, a violation of the Unfair Competition Law, and declaratory relief are all DISMISSED WITHOUT LEAVE TO AMEND. Plaintiffs' cause of action under the Fair Credit Reporting Act is DISMISSED WITH LEAVE TO AMEND.

JLRNA's motion to dismiss is GRANTED in its entirety. Plaintiffs' causes of action for declaratory relief against JLRNA is DISMISSED WITHOUT LEAVE TO AMEND, all other causes of action asserted against JLRNA are DISMISSED WITH LEAVE TO AMEND.

Equifax's motion to dismiss, which was joined by Trans Union, is GRANTED in its entirety. Plaintiffs' causes of action for a violation of the Fair Credit Reporting Act, a violation of the Unfair Competition Law, and for defamation are DISMISSED against both Equifax and Trans Union WITH LEAVE TO AMEND. Plaintiffs' declaratory cause of action is DISMISSED WITHOUT LEAVE TO AMEND against both parties.

Plaintiffs shall file an amended complaint by April 12, 2024.

This Order resolves Docket Nos. 25, 31, 35, 38.

**IT IS SO ORDERED.**

Dated: March 14, 2024

JACQUELINE SCOTT CORLEY
United States District Judge